UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ANGELA BATTLE,

                Plaintiff,

                                    **COMPLAINT**
                                    **JURY DEMAND**

        -against-

WEISERMAZARS, LLP,

                Defendant.
-----------------------------------------------------------x



13 CV 2859
JUDGE FURMAN

## I.  NATURE OF THE ACTION

1. Plaintiff Angela Battle, an African American, brings this action charging discrimination in the terms and conditions of employment on the basis of race and color and for retaliation for opposing discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* (Title VII") and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. 1981 ( § 1981) and for failure to pay overtime, in violation of the Fair Labor Standards Act of 1938, 29 U.S.C.A.§ 201 *et. seq.* ("FLSA"). She brings, in addition, pendent State claims charging discrimination in employment in violation of New York Executive Law § 296 *et. seq.* ("The Human Rights Law") and for failure to pay overtime in violation of New York Labor Law § 650 *et. seq.*

## II.  JURISDICTION

2. Jurisdiction is conferred on this court by 29 U.S.C. § 1343(a), 28 U.S.C. §§ 2201 and 2202. Plaintiff invokes the pendent jurisdiction of the court to adjudicate claims arising under State and Local Law.

### III. THE PARTIES

3. Plaintiff Angela Battle is an African American female and a citizen of the United States.

4. Upon information and belief, Defendant WeiserMazars, LLP ("WeiserMazars") is a limited liability partnership engaged in the business of providing professional accounting services, with its principal place of business at 135 West 50th Street, New York, New York.

### IV. STATEMENT OF CLAIMS

5. At all times mentioned herein, WeiserMazars was an enterprise "engaged in commerce" and/or the "production of goods for commerce" within the meaning of the FLSA.

6. In 1984, WeiserMazars hired Ms. Battle as File Clerk and assigned her to its administrative staff in its Internal Accounting Department.

7. In or about 1989, Ms. Battle was promoted to Payroll Clerk.

8. As a Payroll Clerk Ms. Battle remained a member of WeiserMazars' administrative staff in the Internal Accounting department. Her principal responsibilities included reviewing times sheets, reconciling employee vacation days and preparing W-2 forms for WeiserMazars' employees during tax season.

9. While working under the Payroll Clerk title Ms. Battle generally worked more than forty hours each week and received compensation at time and one half for her overtime hours.

10. At all times mentioned herein, Ms. Battle performed her duties in a satisfactory manner.

11. At all times mentioned herein Ms. Battle consistently received favorable performance evaluations.

12. In or about or about 1990, Helen Loukeris, who is white, was appointed as Controller and head of WeiserMazars' Internal Accounting department.

13. Ms. Loukeris has a reputation among current and former black WeiserMazars employees as having racial animus and discriminating against Blacks in the terms and conditions of their employment.

14. Among current and former black employees of WeiserMazars Ms. Loukeris has a reputation for bringing about the dismissal of blacks and other minorities who complain or threaten to complain about discrimination in the workplace.

15. In or about February 2008, Ms. Battle met with Ms. Lourkeris and John Porricelli, WeiserMazars' Director of Human Resources, who is white, and inquired why similarly situated members of the administrative staff in her department such as Pat Owen, Rima Josephian and Jacqueline Conlisk had been advanced to administrative managerial positions while she remained a Payroll Clerk. Ms. Battle thereupon observed that Ms. Loukeris' facial expression showed deep disapproval of her inquiry.

16. Pat Owens, Rima Joesphian and Jacqueline Conlisk are white females who joined WeiserMazars' Internal Accounting department's administrative staff long after Ms. Battle was hired.

17. Shortly after the meeting with Mr. Porricelli and Ms. Loukeris, Ms. Battle was informed that she would be promoted to the position of "Payroll Manager," effective February 16, 2008, and receive an annual raise of $10,000.00. in connection with her promotion.

18. Although Ms. Battle was advised that the Payroll Manager title was a managerial position, Ms. Loukeris gave her no supervisory responsibilities and assigned her the same administrative functions she performed as a Payroll Clerk.

19. Ms. Battle was not provided with the financial benefits commensurate with her new managerial title, as were similarly situated administrative managers in her department such as Pat Owens, who worked as a Benefits Coordinator, Rima Josephian who worked as a Bookkeeper and Jacqueline Conlisk, who worked as a Human Resources Scheduling Manager.

20. After her promotion on February 16, 2008, Ms. Battle did not receive the same level of annual merit increases provided to similarly situated white administrative managers in her department such as Pat Owen, Rima Josephian, Marc Krasner, Jacqueline Conlisk, and Carla Ephick.

21. In March 2009, Helen Loukeris gave Ms. Battle a $1000 annual merit pay increase, whereas she gave similarly situated white administrative managers such as Rima Josephian, Marc Krasner merit increases ranging from $2000 to $3000.

22. In 2011, Rima Josephian received a $5,000.00 annual merit increase and Ms. Battle received a $1,500.00 annual merit increase.

23. At a meeting held in or about February 2011, Ms. Battle questioned John Porricelli about why similarly placed employees in her department were consistently receiving higher annual merit pay increases than she was. Mr. Porricelli responded that he would speak to Ms. Loukeris.

24. In March 2009, Ms. Battle asked Helen Loukeris why similarly situated white administrative managers such as Rima Josephian was consistently receiving higher merit

increases than she was.   Ms. Loukeris responded,  that Ms. Josephian  has a college degree. Ms. Battle replied  that  she also  has a college degree.

25.   After  her February 16, 2008 promotion  to  Payroll Manager,   Ms.  Battle  observed that   similarly situated white   employees in   with less seniority than herself   such as Marc Krasner, Heather Cohen,   Jacqueline Conlisk,  Rima Josephina, Patricia Owen, Carla Elphick and  Daveda Lipman were  awarded   more annual  vacation days than she  was.

26.   In or about February  2011,   Ms. Battle  asked Mr. Porricelli why  she was not  given the same vacation benefits   that were   provided to similarly situated  white  employees in the Internal Accounting  department.    Mr. Porricelli responded that    vacation benefits at WeiserMazar  are based  on an  "employee's workload and  responsibilities."

27.   In or about January  2011,  Ms. Battle  discovered that  WeiserMazars  had  awarded bonuses to   similarly situated   white  co-workers   such as   Jacqueline   Conlisk, Heather Cohen,  Pat  Owen,  and  Rima  Josephian   for  work   they performed   in connection  with WeiserMazars' merger with Fishbein & Company LLP, a Pennsylvania accounting firm.

28.   Ms. Battle contributed equally to the work involved in the  Fishbein  & Company LLP merger  as her white colleagues  but she   did  not  receive a  bonus.

29.   In or about  February 2011,  Ms. Battle questioned  John Porricelli as to why she did not receive  a  bonus in connection with her work on the Fishbein &Company LLP merger. He responded that  she was "not qualified."

30.   During the period February 16,  2008 to March 27, 2012, while  working  under the Payroll Manager title, Ms. Battle  generally  worked  over forty hours each   week,  averaging five hours in overtime  per week. During the tax season,  Ms. Battle  generally worked  in excess of  ten hours of  overtime each week.

31. During the period February 16, 2008 to March 27, 2012, Ms. Battle had no supervisory responsibilities and she performed essentially the same administrative functions she performed while she worked under the title Payroll Clerk.

32. During the period February 16, 2008 to March 27, 2012, Ms. Battle was a "covered individual" within the meaning of §§ 206(a) and 207(a) of the FLSA.

33. Upon information and belief, during the period February 16, 2008 to March 27, 2012, WeiserMazars failed to make, keep and preserve records with respect to the hours Ms. Battle worked.

34. Despite the fact that Ms. Battle generally worked more than forty hours each week during the period February 16, 2008 to March 27, 2012, WeiserMazars refused to compensate her for the additional hours worked at the rate of time and one-half.

35. During the period she worked under the title Payroll Manager Ms. Battle was entitled to be paid at the rate of time and one-half for her hours worked in excess of the maximum hours provided by the FLSA.

36. Upon information and belief, WeiserMazars intentionally refused to pay Ms. Battle for her overtime work at the statutory rate during the period February 16, 2008 to March 27, 2012.

37. In or about May 2010, Makiella Williams, an African American female who had previously worked as Audit Manager at WeisarMazars, was transferred to the Internal Accounting department and given the title "Internal Accounting Manager."

38. In her role as Internal Accounting Manager Makiella Williams became the direct supervisor of Ms. Battle and the other members of the administrative staff in the Internal Accounting Department.

39. Ms. Williams has a reputation in the WeiserMazars workplace for being confrontational, belligerent and abusive of her coworkers.

40. While working under Ms. Williams' supervision, Ms. Battle was subjected to a persistent barrage of verbal abuse that caused her to suffer emotional distress, nervousness, and stress.

41. Whenever Ms. Battle's white colleagues in her department complained to Helen Loukeris or John Porricelli about being verbally abused by Ms. Williams, they took corrective or remedial action against Ms. Williams, but when Ms. Battle complained no action was taken.

42. In or about December 2010, Rima Josephian, who is Caucasian, complained to Ms. Loukeris about Ms. William's belligerent behavior toward her. Ms. Loukereis thereafter met with Williams, warned her about her behavior toward Ms. Josephian, and reported the incident to WeiserMazars' Human Resources department.

43. In or about 2009, Nicole Digorgio, a white female accountant, complained to WeiserMazars' management about Ms. Williams' belligerent attitude toward her. In response to Ms. DiGorgio's complaint, Human Resources Director John Porricelli directed Ms. Williams not go anywhere near Ms. Digorgio.

44. In or about March 2012, Marc Krasner, who is white complained to Ms. Loukeris about Ms. Williams' conduct, Ms. Loukeris thereafter met with Ms. Williams and admonished her.

45. On or about September 2010, Ms. Battle complained to Ms. Loukeris about Ms. Williams' yelling at her and her belligerent attitude. Ms. Loukeris did not meet with Ms. Williams or otherwise take any remedial action against Ms. Williams.

46. In or about December 2011, Ms. Battle complained to Ms. Loukeris that Ms. Williams had yelled at her and acted unprofessionally. Ms. Loukeris took no corrective action with regard to Ms. Williams.

47. In or about January 2012, Ms. Battle reported to Mr. Porricelli and Ms. Loukeris that Ms. Williams had yelled at her and behaved unprofessionally. No corrective action was taken against Ms. Williams.

48. In February 2012, Ms. Battle complained to Mr. Porricelli that Ms. Williams had yelled at her and behaved unprofessionally. Mr. Porricelli did not speak to Ms. Williams about the incident or otherwise take any corrective action.

49. In March 2012, Amber Kemps, a Human Resources manager in WeiserMazars' Pennsylvania office, told Ms. Battle that she had been directed to record all errors Ms. Battle made in her work and report it to her superiors.

50. On March 27, 2012, shortly after reporting to Mr. Porricelli that Makiella Williams' had verbally abused her, Ms. Battle was summoned to a meeting with Helen Loukeris and informed that her employment was being terminated purportedly due her inability get along with Ms. Williams.

51. During the time relevant to this action, similarly placed white employees at WeiserMazars who reported Makiella Williams' abusive conduct to management were not terminated and similarly placed white employees such as Janine LoCastro, Pat Owen and Daniela Iannelli who had continuously been criticized for errors in their work were not discharged for poor performance.

52. On or about June 12, 2012, Ms. Battle filed a charge of employment discrimination and retaliation with the Equal Employment Opportunity Commission (" E.E.O.C.")

53. On or about February 6, 2013, the E.E.O.C. issued a Notice-of-Suit-Right to Ms. Battle.

54. This action was filed within ninety days from the issuance of the Notice-of-Suit-Right.

## IV. PLAINTIFF'S FIRST CLAIM FOR RELIEF

55. The matters set forth in paragraphs 1 through 54 are hereby repeated.

56. Defendant's conduct as described above constitutes discrimination in the terms and conditions of employment on the basis of race and color in violation of Title VII.

57. As a consequence of defendant's discriminatory conduct in violation of Title VII, Plaintiff suffered lost wages and other benefits in an amount to be determined at trial, and extreme emotional distress, causing damages in the amount $ 300,000.00.

58. Insofar as defendant's conduct as described above was willful and in reckless disregard for Plaintiff's civil rights Plaintiff is entitled to punitive damages in the amount of $300,000.00.

## V. PLAINTIFF'S SECOND CLAIM FOR RELIEF

59. The matters set forth in paragraphs 1 through 54 are hereby repeated.

60. The adverse employment actions taken against Plaintiff constitute retaliation for opposing discrimination, in violation of Title VII.

61. As a consequence of Defendant's retaliatory conduct in violation of Title VII Plaintiff suffered lost wages and benefits in an amount to be determined at trial, together with extreme emotional distress which has resulted in damages in the amount $ 300,000.00.

62. Insofar as Defendant's retaliatory conduct was willful and in reckless disregard for Plaintiff's civil rights, she is entitled to punitive damages in the amount of $300,000.00.

## VI. PLAINTIFF'S THIRD CLAIM FOR RELIEF

63 The matters set forth in paragraphs 1 through 54 are hereby repeated.

64. Defendant's conduct as described above constitutes discrimination in the terms and conditions of employment on the basis of race and color, in violation of § 1981.

65. As a consequence of Defendant's discriminatory conduct in violation of § 1981, Plaintiff has suffered lost wages and benefits in an amount to be determined at trial and extreme emotional distress which has resulted in damages in the amount of $2,000,000.00.

66. Insofar as Defendant's conduct was willful and in reckless disregard of Plaintiff's civil rights she is entitled to punitive damages in the amount of $5,000,000.00.

### VII.   PLAINTIFF'S FOURTH CLAIM FOR RELIEF

67. The matter set forth in paragraphs 1thourgh 54 are hereby repeated.

68. Defendant's conduct as described above constitutes retaliation for opposing discrimination in violation of § 1981.

69. As a consequence of Defendant's retaliatory conduct in violation of §1981, Plaintiff suffered lost wages and benefits in an amount to determined at trial and extreme emotional distress, resulting in damages in the amount of $2,000,000.00.

70. Insofar as Defendant's retaliatory conduct was willful and in reckless disregard of Plaintiff' civil rights, she is entitled to punitive damages in the amount of $5,000,000.00.

### VIII.   PLAINTIFF'S FIFTH CLAIM FOR RELIEF

71. The matters set forth in paragraphs 1 through 54 are hereby repeated.

72. Defendant knowingly and willfully disregarded the provisions of the FLSA as evidenced by its failure to compensate Plaintiff for her overtime wages for hours worked.

73. Upon information and belief, at all relevant times, Defendant had gross revenues in excess of $500,000.00

74. As a consequence of Defendant's failure to comply with the FLSA, Plaintiff suffered damages not in an amount not presently ascertainable of unpaid overtime wages.

75. As a consequence of Defendant's knowing and willful violation of the FLSA, Plaintiff is entitled to liquidated damages, and prejudgment interest thereon.

### IX. PLAINTIFF'S SIXTH CLAIM FOR RELIEF

76. The matters set forth in paragraphs 1 through 54 are hereby repeated.

77. Defendant's conduct as described above constitutes discrimination in the terms and conditions of employment on account of race and color violation of the New York State Human Rights Law.

78. As a consequence of Defendant's discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff suffered lost wages and benefits in an amount to be determined at trial and extreme emotional distress, resulting in damages in the amount of $2,000,000.00.

### X. PLAINTIFF'S SEVENTH CLAIM FOR RELIEF

79. The matters set forth in paragraphs 1 through 54 are hereby repeated.

80. Defendant's conduct as described above constitutes retaliation for opposing discrimination, in violation of the New York State Human Rights Law.

81. As a consequence of Defendant's retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff suffered lost wages in an amount to be determined at trial, and extreme emotional distress, which resulted in damages in the amount of $2,000,000.00.

### XI. PLAINTIFF'S EIGHTH CLAIM FOR RELIEF

82. The matters set forth in paragraphs 1 through 54 are hereby repeated.

83. At all relevant times mentioned herein, Plaintiff was employed by Defendant within the meaning of New York Labor Law §§ 2 and 651.

84. Defendant knowingly and willfully violated Plaintiff's rights under the New York Labor Law by failing to pay her overtime wages at rates of not less than one and one-half times plaintiff's regular pay for each hour worked in excess of forty hours each week.

85. Due to Defendant's willful violation of the York Labor Law, Plaintiff is entitled to recover from Defendants her unpaid wages, in an amount to be ascertained at trial and liquidated damages pursuant to § 663(1) of the New York Labor Law.

## XII.   JURY DEMAND

86. Plaintiff requests that all the issues in this matter be tried before a jury.

WHEREFORE, Plaintiff demands judgment in her favor and against the Defendant with respect to her First Claim for Relief in the amount $300,000.00, plus back pay and lost benefits in an amount to be determined at trial, equitable relief reinstating her to her position, together with reasonable attorney fees; judgment on her Second Claim for relief in the amount of $300,000.00, plus back pay and lost benefits in an amount to be determined at trial, equitable relief reinstating her to her position, together with reasonable attorney fees; judgment on her Third Claim for Relief in the amount of $2,000,000.00, plus back pay and lost benefits in an amount to be determined at trial, together with $ 5,000,000.00 in punitive damages, equitable relief reinstating her to position and reasonable attorney fees; judgment on Plaintiff's Fourth Claim for Relief in the amount of $2,000,000.00, plus back pay and lost benefits in an amount to be determined at trial, together with $5,000,000.00 in punitive damages, equitable relief reinstating her to her position, and reasonable attorney fees: judgment on Plaintiff's Fifth Claim for Relief for lost overtime wages in an amount to be ascertained at trial, plus liquidated damages, prejudgment interest, and reasonable attorney fees; judgment on Plaintiff's Sixth Claim for Relief in the amount of in the amount of $2,000,000.00, and equitable relief

reinstating her to her position; judgment on Plaintiff's Seventh Claim for Relief in the amount of $2,000,000.00 and equitable relief reinstating her position and judgment on Plaintiff's Eighth Claim for Relief or lost overtime wages in an amount to be ascertained at trial and liquidated damages, and reasonable attorney fees, and costs and disbursements.

Dated: Brooklyn, New York
      April 20, 2013

                                        ROOSEVELT SEYMOUR
                                        *Attorney for Plaintiff*
                                        162 Montague Street, Suite 201
                                        Brooklyn, New York 11201
                                        (718) 802-0055
                                        Bar Code: RT0915